## No. 13,046.

### JOHN W. HOLMES FOR USE OF MINOR WILLIS ST. CLAIR HOLMES VS. THE CROMWELL & SPENCER CO., LIMITED.

#### SYLLABUS.

(1.) A lad, at the instance of the engineer in charge of a company's engine, gave a helping hand to two of the company's employees in loading eight or ten ties upon the engine to be by it taken to a break in the company's road about a mile distant, and having done so, rode down in the engineer's cab to the break for amusement, and from curiosity. While so riding he threw a few sticks of wood into the furnace connected with the locomotive at the request of the engineer.

HELD: These facts did not place him in the company's employment, particularly as the engineer was without authority to employ persons under him. He was substantially a volunteer.

(2.) A company is not responsible for injuries received by a person who holding no contractual relations with it, either as a passenger or an employe, and with no invitation from it attempts to board one of its moving engines by

steps leading up to the engineer's cab, even though the injury should have been due to the defective condition of the steps.

ON APPEAL from the Tenth Judicial District Court for the Parish of Rapides. *Hunter, J.*

*John C. Blackman, Allen T. Hunter* and *Robert P. Hunter* for Plaintiff, Appellee.

*Andrews & Hakenyos, H. H. White* and *D. B. H. Chaffe* for Defendant, Appellant.

Argued and submitted February 9, 1899.
Opinion handed down February 20, 1899.

The opinion of the court was delivered by

NICHOLLS, C. J. The plaintiff, a minor, represented by his father, obtained judgment in the District Court of Rapides for the sum of five thousand dollars, for personal injuries received by him in attempting to enter the engineer's cab of an engine operated by defendant's employees. The accident was alleged to have occurred by reason of a defective step leading up to the cab.

The defendants appealed and the plaintiff in the Supreme Court applied for an increase of damages.

Plaintiff's cause of action is set out in two petitions. In the first he alleged that on or about the 19th day of February, 1898, said minor was working in the employ of the defendant company as a log washer, or washing logs with hose, and while in such employment on the day mentioned, he got on defendant's tram railway as employees were allowed and instructed to do; that he had gone out to assist in the loading of ties; that he was returning from such employment; had gotten off and was about to remount said engine when his foot slipped on account of absence of properly adjusted appliances and the poorly constructed, crooked and broken step; that it was contributory negligence on defendant's part, and wanton and harmful disregard for the safety of their employees.

That the minor was in no fault whatever; that from such culpable

21

negligence on the part of defendant company in not having the step properly adjusted, the minor's left foot slipped into the cogs and was crushed and torn off; the leaders of the leg were cut in divers places; the flesh torn above the knee exposing the bone. That in consequence amputation of the foot became necessary. That all of this could have been prevented had it not been for the gross negligence of the company. That the minor by reason of said facts, had suffered damages to an amount of ten thousand five hundred dollars. That the minor was about sixteen years of age; that he was not a skilled workman, but was receiving seventy-five cents a day for his labor. That by the loss of his foot he had become totally incapacitated for labor by which he gained his living and assisted in supporting his family.

In the second petition it was alleged that the minor being employed as a log washer it was his added duty also to do any other work that might be assigned him; that in addition to being on the engine and the allegation thereof, he was ordered by the engineer of the tram road of defendant to "fire" upon the said engine, the fireman being absent; that the said engineer was considered a superior and had a right to command; that the child obeyed and in the discharge of his newly assigned duty he was injured from the defective machinery. Defendant filed an answer under reservation of a peremptory exception of no cause of action. The latter was predicated upon the allegation that the demand for damages was based substantially upon the averment that "plaintiff was in the act of boarding a running locomotive" when the injury was received, without the same being necessary in the discharge of any duty in his employment, or in obedience to the order of any officer or superior of defendant company. That such act was the immediate and proximate cause of the injury, and was contributory negligence, so gross as to bar any right of recovery in plaintiff.

In their answer defendants pleaded, first, the general issue. Further answering, they averred that plaintiff wantonly, recklessly and voluntarily put himself in a position of danger by boarding a moving locomotive, when the same was not necessary in the discharge of any duty, or in response to the order of any officer, or superior of the company, and this reckless and wanton conduct was the immediate and proximate cause of the injury he received. That the plaintiff had no right nor business on said locomotive, or even in its immediate proximity. That he was there without the knowledge, consent or procurement of respondents, and against their well known, expressed and published

orders. That respondents had positively forbidden all persons, not even excepting its employees, to board or ride on the locomotive or log train drawn by it, and this rule was published by posting in the cab of the locomotive and other public places about the premises. That all of its appliances for the running and handling of its train and for the protection of those employed thereon were complete and in good order. They specially averred that in this connection they owed no duty to the plaintiff, except not to wantonly harm him as he was not employed on the locomotive, but was there for his own pleasure, and at his own peril.

Defendants denied that plaintiff was employed either in loading ties, or in firing on the engine, or if so engaged, it was without their knowledge or consent, or without the knowledge or consent or procurement of any of their employees having authority to so employ him.

They denied that the minor was in their employ on the day the accident happened. They averred that at other times and on other days when he was employed by them, his duty was to wash logs as they were taken from the skidway and carried to the mill, and that his post of duty under such employment was at a point some distance from the locomotive or track on which it ran, and that he was never employed by them, or any one having their authority to perform any other service, and that in the performance of said service he was in no danger whatever from the locomotive.

OPINION.

We have given the testimony in this case our most careful consideration, and have reached the conclusion that there was no basis whatever for a judgment in favor of the plaintiffs against the defendants. The defendants owned a sawmill in the parish of Rapides and were engaged in the business of sawing of logs, which were carried to their mill by means of a locomotive and cars operated by their employees upon a tramway which they had constructed. The business seems to have been an extensive one, requiring for its proper working the creation of distinct departments, at the head of which were foremen or managers, with separate and independent duties and obligations. One of these departments, known as the "milling department," was in charge of a Mr. Maynard; the other known as the "woods" or "logging" department, was under the control of a Mr. Evans. Each head

of department had the exclusive right of employing workmen for his own department and the duties of the men so employed were confined to the work called for therein. The selection and control of the men connected with the operation of the railway was entrusted to Evans. One of the locomotives upon the tramway had for its engineer a man by the name of Patterson, and for its fireman, one Hardy Iler. There was strictly no necessity for a fireman upon the locomotive, as the character of the work done and the distances run was such as to enable the engineer not only to act as such, but to perform the duty of a fireman, and for some considerable time the engineer had, in fact, performed the duties of both.

The evidence shows there were duplicate steps leading up to the engine on the right and left sides of this particular locomotive. That there were cogwheels under and in front of the steps, upon the right side of the locomotive, but none under and in front of those upon the left. That the engineer's usual position was upon the right of the engine cab, and that of the fireman was upon the left; that each habitually entered the cab by the steps on the side next to the position he was called upon to occupy. It is quite likely that on the 19th of February, 1898, the steps upon the right of the locomotive were not in as good condition, nor as well protected for purposes of safety, as they should have been. What the condition of the steps on the left was upon that day was not made to appear. On the 19th of February, 1898, defendant's saw mill, for some reason, was not in operation, but the trains were out in the woods engaged in the work of bringing in logs. Shortly after twelve o'clock of that day, Patterson's engine, with cars loaded with logs attached thereto, was making its way to the mill, when it was discovered at a distance of about a mile therefrom that the ties upon the tramway were in such a condition as to make it necessary to stop the cars and put in new rails before proceeding further. It was possible, however, for the locomotive to pass over. In order to remedy the trouble the locomotive was detached from the cars and sent forward to the mill, Patterson receiving instructions to have some ties which were at the mill loaded upon the engine and tender and to return with them to the break in the road. Hardy Iler, the fireman, was upon the locomotive at that time—he remained upon it sometime after it reached the mill, and assisted in placing the new ties upon the engine. When the engine reached the mill, Patterson found there several men and a number of lads (among them the plaintiff)

Holmes vs. Cromwell & Spencer Co., Ltd.

loitering around the mill for want of employment. The plaintiff had been in defendant's service for some time, employed as a log washer, but that duty not being continuous he was only engaged from day to day as occasion required. On that particular day the plaintiff was not engaged.

When the time came for loading up the engine, Patterson called upon several men to assist in doing so, and according to the testimony of the plaintiff, he called upon him and the other boys to give a helping hand, which they did. When the engine started back, these boys got upon it, and went down to the break; the plaintiff and a boy named Graham being permitted to enter the cab. The fireman, Iler, did not go down on the engine to the break, but remained at the mill. Plaintiff testified that on the way down, Patterson called upon him to "fire up," and that he filled up the furnace with wood; that Patterson had told him before getting on the engine that he wanted some one to fire up. The engine remained at the break some twenty or thirty minutes while the ties were being unloaded and then returned to the mill. In this interval the boys had gone down to a creek in the neighborhood, but they were recalled by Patterson's calling out to them as he started his engine on its return, "come on boys, if you want to go back." Before they could reach the engine it had gotten under way and they climbed upon the back end of the tender, which the testimony shows was a place of perfect safety. Just before the engine reached the mill, and while it was "slowing up," plaintiff got down from the left of the rear of the tender, ran over to and along its right side up to and opposite the steps leading to the engineer's cab, and there attempted to get into the cab. As he placed his foot upon the step it slipped off and got entangled in some cog wheels which were under and in front of the steps. The engine was at once stopped and the boy extricated, but his foot was crushed and his leg badly cut. He was taken to his home where the front part of his foot was amputated. He remained in bed several months necessarily suffering great pain. His injuries are permanent, and it is shown that his ability to perform work, such as his station in life would call for, has been greatly impaired.

The jury evidently permitted their sympathy to get the better of their judgment. Well directed and judiciously controlled sympathy is commendable at all times, but sympathy which seeks to remedy a distressing accident, by casting loss and responsibility upon parties who are in no wise blamable on account of it, is not permitted in a

court of justice. This accident by which a young lad has been maimed for life is certainly much to be deplored, but defendants in. no way contributed to it.

Patterson was not authorized to employ the plaintiff in any capacity, and his permission to him to enter the engiuer's cab, when the engine was going down to the break, was in violation of positive prohibitory orders. The mere call upon the boys who were loitering around the mill to give a helping hand in putting the ties upon the engine can in no sense, be called an employment of them by the company. Their responding to such a call was purely a voluntary and gratuitous act such as any one standing in the neighborhood of the engine would have responded to, not as employment, but as a favor.

The nature and character of what occurred is very expressively explained by the statement made by one of these boys on the stand, "that they were helping just to be helping."

We see nothing in the record which would justify us in reaching the conclusion that Patterson ever thought of employing plaintiff, or that plaintiff ever thought of being employed as a "fireman" upon the engine. Had not this accident occurred we have no idea that such a claim would have ever been put forward. Woodward, one of the men who went down to the break on the engine, says that he heard Patterson say to the plaintiff, while the latter was in the cab: "Willis, throw some wood in the furnace," but this is nothing more than a request which might well have been addressed to Woodward himself. Everything negatives the idea that plaintiff could have been under any employment as a fireman even had Patterson had the authority (which he did not have) to employ him as such. The boys evidently went down on the engine as an amusement or from curiosity to see the situation at the break. The fireman Iler testified that he did not go back on the engine to the break for the reason that knowing where it was going and how long it would be away before returning he had "fired up" before the engine left the mill, putting on steam enough to last until it would return, and the testimony shows there was no necessity for any further "firing up." Assuming, however, that Patterson ever intended to employ plaintiff as a fireman, and that plaintiff understood that he was so employed, the employment would not have extended beyond the outgoing trip, and the relations of the parties on that score terminated at the break. If Patterson had imagined that plaintiff had been employed as a fireman and that

his services as such were needed for the return trip, he certainly would not have started back to the mill without seeing that he was aboard. His calling out to the boys, as he was leaving, "come on boys, if you want to go back," clearly indicates what the actual situation was. Patterson did not call upon the plaintiff on the return trip to go into the cab, nor did the latter attempt to go into it until the engine was nearing the end of the trip and within a few yards of the mill, and when it was perfectly apparent that it would reach the round house, as in fact it did reach the round house, without any further "firing up." We do not know why the plaintiff left his place on the rear of the tender and attempted to go into the cab while the engine was in motion. The reason assigned by him that he thought it was necessary to fire up cannot be received as the correct one, in view of the situation of the engine at that time. He was not called upon to go into the cab; there was no reason for his doing so; there was no reason for his supposing it was necessary for him to have done so. He left a place of safety and without any necessity, and in the discharge of no duty, attempted to broad a moving train engine. The defendant company is not responsible for the consequences of that act. There were no contractual relations of any kind at that time between the parties. Under the evidence we have no alternative but to set aside the verdict of the jury and the judgment of the court based thereon, and to reject plaintiff's demand.

For the reasons assigned, it is ordered, adjudged and decreed that the verdict of the jury be set aside; that the judgment thereon rendered be and the same is hereby annulled, avoided and reveresd and plaintiff's demand be rejected with costs in both courts.